[No. 33624-0-I.   Division One.   February 27, 1995.]

WILLIAM PATRICK GUIMONT, ET AL, *Appellants*, v. THE
CITY OF SEATTLE, ET AL, *Respondents*.

*John Blankinship,* for appellants.
*Hugh R. Tobin,* for respondents.

AGID, J. — William Patrick Guimont, The Gemo Co., Inc., d/b/a National Trailer Park, Marie Guimont Trust, and tenants of National Trailer Park (collectively Guimont) appeal a summary judgment order dismissing their declaratory jud-

ment action against the City of Seattle in which they contended that a city ordinance regulating mobile home parks effects an unconstitutional taking and violates their right to substantive due process.[1] We hold that the ordinance is constitutional on its face, that the challenges to it as applied to Guimont are not ripe and that the ordinance does not violate Appellants' right to due process. Accordingly, we affirm the trial court.

## I

### FACTS

National Trailer Park (Park) has been a mobile home park since the late 1940's. The Park property was annexed to the City of Seattle (City) in 1954 and is zoned C1, commercial use. Mobile home parks are permitted residential uses in C1 zones. A mobile home park is defined as "a tract of land . . . rented for the use of more than one (1) mobile home occupied as a dwelling unit." Seattle Municipal Code (SMC) 23.84.032; SMC 23.47.004. There are approximately 120 lots in the Park.

In 1989, the Legislature passed, and in 1990 amended, the Mobile Home Relocation Assistance Act (Act), RCW 59.21, which required mobile home park owners to contribute money toward tenants' relocation costs when mobile home parks closed or converted to other uses. Laws of 1989, ch. 201; Laws of 1990, ch. 171. The Supreme Court declared the Act unconstitutional on due process grounds in June 1993. *Guimont v. Clarke*, 121 Wn.2d 586, 854 P.2d 1 (1993), *cert. denied*, 114 S. Ct. 1216 (1994) (*Guimont* I). While that case was pending, the Legislature again amended the Act to its present form. Laws of 1991, ch. 327. The Act now pro-

---

[1]Guimont also attacks the monetary relocation assistance provisions of the ordinance, questioning whether they can be enforced when the Supreme Court has held that the same provisions in RCW 59.21 violate due process. *Guimont v. Clarke*, 121 Wn.2d 586, 613, 854 P.2d 1 (1993) (*Guimont* I), *cert. denied*, 114 S. Ct. 1216 (1994). It is apparent that the City cannot enforce an unconstitutional law. *See Robinson v. Seattle*, 119 Wn.2d 34, 830 P.2d 318 (holding that the City's enforcement of a previously invalidated housing preservation ordinance gave rise to a civil rights claim), *cert. denied*, 113 S. Ct. 676 (1992). We will therefore not address this issue further.

vides that tenants will receive relocation assistance payments from the State and, if there are insufficient State funds, from park owners. RCW 59.21.020(3), (4). The 1991 amendments also provide relocation assistance to tenants who use recreational vehicles (RV's) as residences. RCW 59.21.020(1); Laws of 1991, ch. 327, § 11. *Guimont I* does not address the 1991 amendments, and they are not challenged in this appeal.

In July 1990, the City passed Ordinance 115183 (Ordinance), codified at SMC 22.904.400-.470.[2] The Ordinance excludes "recreational vehicles" from the definition of a mobile home,[3] reserves mobile home parks solely for mobile homes, and provides that RV's may not be placed on mobile home lots which become vacant after the effective date of the Ordinance and can accommodate mobile homes. SMC 22.904.400. Thus, those in place on the effective date are "grandfathered" and permitted to remain. There are exceptions to the RV prohibition for lots which cannot physically accommodate a mobile home. SMC 22.904.400. The Ordinance also requires park owners to submit a relocation report and plan to the City's Department of Construction and Land Use (DCLU) before closing a park or changing its use. SMC 22.904.410. The purpose of the relocation report is to inform the City of mobile home tenants' needs and living situations and detail the ways in which the park owner intends to comply with RCW 59.20, the Mobile Home Landlord-Tenant Act, and RCW 59.21, the Mobile Home Relocation Assistance Act. SMC 22.904.420. The Ordinance requires park owners to pay the relocation assistance required by the original Act, provide tenants with relocation resources, and help them obtain and complete application forms for state-mandated relocation assistance and move their mobile homes from the park.

---

[2] The Ordinance was passed for the same reason as the Act: to preserve a form of housing occupied primarily by elderly and low- to modest-income households.

[3] This definition is consistent with the Seattle zoning code, which defines "recreational vehicle" as "a wheeled vehicle designed for temporary occupancy . . .. A recreational vehicle is not a dwelling unit." SMC 23.84.032.

In August 1991, the City notified Guimont that it was violating the Ordinance because RV's were occupying Park spaces designed to accommodate mobile homes. The City ordered Guimont to remove the RV's by September 15, 1991. The deadline was later changed to November 1, 1991.

## II

### UNCONSTITUTIONAL TAKING ARGUMENTS

Guimont asserts that the RV prohibition results in an unconstitutional taking, both on its face and as applied to the Park,[4] contending that we should apply a taking analysis to each lot in the Park rather than to the property as a whole. A constitutional taking analysis of a challenge to a land use regulation ordinarily examines its impact on the regulated property as a whole, not on a portion of the property. *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 334-35, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990). In certain limited circumstances, a different approach may be appropriate. However, we need not decide that issue in this case. For the reasons discussed below in conjunction with Guimont's as-applied challenge, we do not know at this juncture whether Guimont would be left with no economically viable use of any particular lot in the Park once the provisions of the Ordinance grandfathering certain lots and exempting others are applied to the property. *See* SMC 22.904.400. Therefore, we will examine the effect of the Ordinance on the entire Park.

Fortunately, this case does not require us to completely rehash the complex, confusing and often ethereal realm of theoretical law that has developed in Washington under the taking clause of the fifth and fourteenth amendments to the United States Constitution. *See, e.g.,* Richard L. Settle, *Regulatory Taking Doctrine in Washington: Now You See It, Now*

---

[4]Although Guimont argues that the state constitution affords greater protection to property owners than does the federal constitution, its argument on the *Gunwall* factors does not support an independent state constitutional analysis. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). We will therefore address only the federal constitutional issues. *Guimont I*, 121 Wn.2d at 604.

*You Don't*, 12 U. Puget Sound L. Rev. 339 (1989), *Guimont I*, 121 Wn.2d at 614-25 (Utter, J., concurring). As we have no desire to add more heat to the discussion at the expense of light, we will not recite all of the tests and analytical frameworks discussed in *Guimont I*, *Robinson v. Seattle*, 119 Wn.2d 34, 830 P.2d 318, *cert. denied*, 113 S. Ct. 676 (1992) and *Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 829 P.2d 765, *cert. denied sub nom. Robinson v. Seattle*, 113 S. Ct. 676 (1992), but will discuss those portions of a taking claim analysis that the issues raised here implicate.

■ A land use regulation may be challenged as an unconstitutional taking, a violation of substantive due process, or both. *Guimont I*, 121 Wn.2d at 594. We consider each ground independently. *Presbytery*, 114 Wn.2d at 329. When a land use regulation is challenged on both grounds, we analyze the taking claim first. *Guimont I*, 121 Wn.2d at 594.

■ After the United States Supreme Court decision in *Lucas v. South Carolina Coastal Coun.*, 505 U.S. 1003, 120 L. Ed. 2d 798, 112 S. Ct. 2886 (1992), *Guimont I* instructs us to first determine whether the regulation constitutes a per se taking. 121 Wn.2d at 600. A per se taking is government action which destroys a fundamental attribute of property ownership and, after *Lucas*, 112 S. Ct. at 2893-94, the right to make some economically viable use of the property. 121 Wn.2d at 600-01. A per se violation of the taking clause occurs when the regulation constitutes either a "total taking" or a "physical invasion" of the property or destroys a fundamental attribute of ownership.[5] 121 Wn.2d at 600. A "total taking" occurs when a regulation denies the owner all economically beneficial or productive use of the property. *Lucas*, 112 S. Ct. at 2893-94. A "physical invasion" occurs when a regulation permits or causes any physical intrusion onto the property, no matter how minute the invasion or how weighty the public interest advanced. *Lucas*, 112 S. Ct.

---

[5]Fundamental attributes of ownership include the right to possess, exclude others from or dispose of property. *Guimont I*, 121 Wn.2d at 595. Obviously, these rights are implicated by a total taking, a physical invasion or a regulation which denies the owner any beneficial use of his or her land.

at 2893. If a property owner can establish a per se violation and the government cannot rebut the claim, a taking has occurred. No further analysis is required, and the owner is entitled to "categorical treatment" and must receive just compensation under the Fifth Amendment. *Guimont* I, 121 Wn.2d at 600, 602-03.

■■ If the property owner is unable to establish that the regulation is a physical invasion, a total taking or otherwise destroys or derogates a fundamental attribute of ownership, the court reaches the once familiar benefit/burden analysis. *Guimont* I, 121 Wn.2d at 603. That inquiry is whether the regulation "goes beyond preventing real harm to the public which is directly caused by the prohibited use of the property and instead imposes on those regulated the requirement of providing an affirmative public benefit, or . . . infringes on a fundamental attribute of ownership".[6] *Guimont* I, 121 Wn.2d at 603. If it does, we must then determine whether the regulation substantially advances a legitimate state interest. If so, we next ask whether that interest is outweighed by the adverse economic impact on the landowner. If the burden outweighs the benefit under the 3-part test applied *infra* at page 84, a taking has occurred and the owner is entitled to compensation. 121 Wn.2d at 603-04. If the owner is unable to establish a taking under this analysis, we proceed to the due process analysis.

Here, Guimont argues that both a "total taking" and a "physical invasion" have occurred as a result of the RV prohibition. We disagree. There has not been a "total taking" because the Ordinance does not prevent all economically viable use of the Park. *Lucas*, 112 S. Ct. at 2901. Guimont

---

[6]Presumably, these fundamental attributes of ownership are different in nature or scope from those which, if destroyed or "derogated", qualify for categorical treatment as a per se taking. Compare text in *Guimont* I, 121 Wn.2d at 601-02, with text at 603, citing *Presbytery*, 114 Wn.2d at 329. Perhaps a clue to the distinction is the difference between "destroyed" and "derogated" or "implicated", the former being a per se taking and the latter two requiring only a benefit/burden analysis. However, the *Guimont* I opinion uses "derogate" interchangeably with "destroy". Because "derogate" means "take away" or "detract", *Webster's II New Riverside University Dictionary* 366 (1984), it is not synonymous with "destroy", which means "ruin completely". *Webster's II*, at 368.

can (and does) still rent out lots although, as he argues in his as-applied challenge to the Ordinance, some could become difficult to rent to mobile home owners as a result of the Ordinance.[7] Guimont may also change the use of the Park to any use permitted under the existing zoning. Both options permit an economically viable use of the Park, and Guimont cannot establish a total taking.

Relying on *Yee v. Escondido*, 503 U.S. 519, 118 L. Ed. 2d 153, 112 S. Ct. 1522, 1528 (1992), Guimont contends that the RV prohibition causes a physical invasion because it requires the owners to submit to a physical invasion of its land. *Yee* does not support this argument and, in fact, is consistent with our conclusion that no physical invasion has occurred.

Yee involved a local ordinance controlling rent in mobile home parks, and a state law limiting the grounds on which mobile home tenants could be evicted. The owner of a mobile home park contended that these regulations effected a taking because they compelled a physical occupation of his property by granting current tenants the right to physically occupy his property on a permanent basis. The owner also argued that the ordinance, which prohibited him from raising the rent, amounted to a physical invasion because it deprived him of the ability to choose incoming tenants who were purchasing mobile homes already located in the park. The Supreme Court disagreed, holding that landowners who voluntarily invite others to occupy their land do not have a right to compensation where a regulation merely limits their ability to exclude certain persons and they retain the right

---

[7]According to documents submitted to support the summary judgment motion, the Park's electrical system has not been upgraded or modified since 1964 and cannot accommodate most new mobile homes. Many older homes that would fit the Park's electrical specifications are nearing the end of their useful lives and have deteriorated to the point that relocation would be impossible. Because RV's may not be placed on lots that could accommodate mobile homes, some lots could remain vacant while awaiting a suitable mobile home, either new or old. However, as we discuss below, the Ordinance contains a provision permitting rental to an RV if a lot cannot accommodate a mobile home because of the lot's size, irregular configuration or inadequate utilities or facilities. SMC 22.904.400.

to change the underlying use of the land. *Yee,* 112 S. Ct. at 1528-30. The Court also held that the laws were permissible regulations on the use of property and did not authorize a physical occupation. *Yee,* 112 S. Ct. at 1531.

Likewise, the Ordinance challenged here does not force park owners to submit to a physical invasion of their land. As in *Yee,* Guimont has opened its property to tenants and may, within statutory guidelines, terminate those tenants, close the Park, or convert the property to other uses. The Ordinance regulates the structures which may occupy Guimont's property as long as it remains a mobile home park but does not compel any actual physical occupation. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 73 L. Ed. 2d 868, 102 S. Ct. 3164 (1982) (involving physical invasion of private property). It therefore does not amount to a "physical invasion". *Yee,* 112 S. Ct. at 1530-31.[8] Because the Ordinance does not constitute a "total taking" or a "physical invasion", we conclude that there is no per se taking and Guimont is not entitled to categorical treatment under the *Lucas/ Guimont* I analysis.

We move next to the question of whether the Ordinance "safeguards the public interest in health, safety, the environment or the fiscal integrity of an area" or whether it " 'seeks less to prevent a harm than to impose on those regulated the requirement of providing an affirmative public benefit' ". (Citations omitted.) *Guimont* I, 121 Wn.2d at 603 (quoting *Robinson,* 119 Wn.2d at 49). This test employs the public benefit/private burden analysis discussed above, once the court is satisfied that the regulation substantially advances

---

[8]Guimont's other authority, *Loretto,* 458 U.S. 419, is not applicable here. The statute challenged in *Loretto* required a landowner to permit a cable television company to affix cable facilities to owner's property and, in return, receive no more than $1 annual compensation. The Court held that the government had authorized a permanent physical occupation of property by a third party and that this occupation, though de minimis, constituted a compensable taking. *Loretto,* 458 U.S. at 438. The Court also expressly stated that its holding did not affect the body of case law giving states broad power to regulate housing conditions and landlord-tenant relationships because those cases did not involve any physical invasion of property. *Loretto,* 458 U.S. at 440.

a legitimate state interest. In this case, the Supreme Court has already made the latter determination. In its discussion of the substantive due process challenge to RCW 59.21, the *Guimont* I court discussed the purpose of the Act and the State's legitimate interest in solving the serious problems caused by the shrinking number of mobile home lots available for the elderly and persons with low incomes. 121 Wn.2d at 610. Here, too, the City relied on the shrinking inventory of pads for mobile homes occupied by the same groups of tenants. Ordinance 115183, Legislative Findings. We agree that making as many such pads as possible available for the elderly and low-income population is a legitimate state interest.

We must therefore examine three questions to determine whether the burden on the property owner outweighs the benefit to the public: "(1) the regulation's economic impact on the property; (2) the extent of the regulation's interference with investment-backed expectations; and (3) the character of the government action." *Guimont* I, 121 Wn.2d at 604. For the reasons discussed in connection with its as-applied challenge, we conclude that Guimont has not yet demonstrated that the regulation has any impact on the use or value of its property. The City has not yet had an opportunity to determine whether the unfilled pads cannot accommodate other mobile homes and therefore may be used for RV's. Nor has Guimont asked the City to apply the grandfather provisions of the Ordinance to the RV's currently on the property. Without any showing of a financial impact on the property, we cannot conclude that there is any interference with investment-backed expectations. On the facts before us, the government action appears reasonable and, as noted in connection with the due process claim, reasonable in light of the state interest in question. We therefore conclude that Guimont has not established that the private burden outweighs the public benefit such that it is entitled to compensation for a taking of its property.

If the Ordinance nonetheless destroys, derogates or implicates a fundamental attribute of property ownership,[9] we must determine whether the regulation prevents a harm or, at the expense of a property owner, confers a public benefit. *Robinson*, 119 Wn.2d at 49. We conclude that the Ordinance does none of the above because it does not prevent Guimont from possessing or disposing of the property or excluding others. *Guimont I*, 121 Wn.2d at 602. It is not required to sell or retain the Park, may change its use and may reject tenants on any lawful basis. The Ordinance does restrict what structures Guimont may place on his land should it choose to continue operating a mobile home park, but this restriction does not differ significantly from any legal zoning provision. *Robinson*, 119 Wn.2d at 50. As such, it does not destroy, derogate or implicate a fundamental attribute of property ownership.

We must also reject Guimont's argument that the Ordinance, as applied, constitutes a taking. A regulatory taking claim is not ripe until "the initial government decision maker has arrived at a definite position, conclusively determining whether the property owner was denied 'all reasonable beneficial use of its property[.]' " *Orion Corp. v. State*, 109 Wn.2d 621, 632, 747 P.2d 1062 (1987) (quoting *Williamson Cy. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1985)), *cert. denied*, 486 U.S. 1022 (1988); *Hayes v. Yount*, 87 Wn.2d 280, 297, 552 P.2d 1038 (1976). In this case, Guimont has not yet requested and the City has not made a determination of which, if any, lots at the Park are exempt from the RV prohibition due to space or utilities limitations and which, if any, RV's currently at the Park are "grand-

---

[9]As we said above in footnote 6, *Guimont I* is unclear about where we go from here. It holds that, if a regulation is less than a "total taking" or "physical invasion" and if a fundamental attribute of property ownership is *not* implicated, analysis proceeds to the second part of the inquiry. *Guimont I*, 121 Wn.2d at 601, 603. It does not address where the analysis goes if a regulation does not effect a "total taking" or "physical invasion" but *does* implicate a fundamental attribute of property ownership. However, since Guimont does not argue here that some fundamental attribute of ownership which would be a *per se* taking other than those discussed above is implicated, we can leave this conundrum to another day.

fathered". We therefore decline to consider this challenge to the Ordinance.

## III

### DUE PROCESS

Guimont next challenges two provisions of the Ordinance as violations of the Due Process Clause of the Fifth and Fourteenth Amendments: the RV prohibition and the relocation report requirement.

Even if a regulation does not effect a taking, it must still comply with substantive due process. *Guimont* I, 121 Wn.2d at 607. *Guimont* I sets out the classic 3-prong due process reasonableness inquiry. It asks " '(1) whether the regulation is aimed at achieving a legitimate public purpose; (2) whether it uses means that are reasonably necessary to achieve that purpose; and (3) whether it is unduly oppressive on the landowner.' "[10] *Guimont* I, 121 Wn.2d at 609 (quoting *Presbytery*, 114 Wn.2d at 330).

### a. RV Prohibition

The first question is whether the Ordinance is aimed at achieving a legitimate public purpose. Here, the City has an interest in ensuring that mobile home owners, who are often elderly or low-income, have places to put their mobile homes. As noted above, this interest is clearly legitimate. To further this interest, it passed the Ordinance in an effort to preserve increasingly scarce mobile home lots. The RV prohibition included in the Ordinance reserves mobile home lots, wher-

---

[10]We reject the City's argument that the proper standard to determine whether a regulation violates due process is the less stringent rational relationship test. Its primary support for this argument, *Concrete Pipe & Prods. of Calif., Inc. v. Construction Laborers Pension Trust for Southern Calif.*, 508 U.S. 602, 124 L. Ed. 2d 539, 113 S. Ct. 2264, 2286-87 (1993), does not apply here. There, *Concrete Pipe* made a substantive due process challenge to certain provisions of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), Pub. L. No. 96-364, 94 Stat. 1208 (1980). The Court had previously upheld the constitutionality of MPPAA and concluded that "federal economic legislation, which is not subject to constraints coextensive with those imposed upon the States by the Contract Clause of Art. 1, § 10 of the Federal Constitution, . . . is subject to due process review only for rationality". (Citations omitted.) *Concrete Pipe*, 113 S. Ct. at 2289. The Ordinance at issue here is not federal economic legislation, and the *Concrete Pipe* rationale does not apply.

ever possible, for the exclusive use of mobile homes. Thus, the Ordinance substantially advances the interest on which the City relied in adopting it.

The second question examines whether the means used are reasonably necessary to achieve the purpose. The RV prohibition is a reasonable way to ensure that mobile home lots are kept available to mobile home owners because it reserves occupation of lots to mobile homes unless a lot is already occupied by an RV or cannot be occupied by a mobile home. By permitting existing RV's to stay in the Park and allowing alternative uses of substandard lots, the City has tailored the Ordinance in a manner that regulates only to the extent necessary to achieve its purpose.

Finally, we examine whether the Ordinance is unduly oppressive by weighing the burden imposed on the property owner against the public benefit sought. On the public's side, we consider "the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it and the feasibility of less oppressive solutions would all be relevant." *Guimont* I, 121 Wn.2d at 610 (quoting *Presbytery*, 114 Wn.2d at 331). On the owner's side, we consider

> the amount and percentage of value loss, the extent of remaining uses, past, present and future uses, temporary or permanent nature of the regulation, the extent to which the owner should have anticipated such regulation and how feasible it is for the owner to alter present or currently planned uses.

*Guimont* I, 121 Wn.2d at 610 (quoting *Presbytery*, 114 Wn.2d at 331).

As the Supreme Court determined in *Guimont* I, we conclude that mobile home park closures present a serious problem but that mobile home park owners are not more responsible for those problems than the rest of the population. *Guimont* I, 121 Wn.2d at 610-11. The Ordinance at issue here is directed toward the same problems and the same group of property owners as was the statute challenged in *Guimont* I. However, the Ordinance is much less oppressive than the statute struck down in *Guimont* I. The public bene-

fits because the RV prohibition helps to solve the problem of a shortage of mobile home pads for low-income and elderly people by reserving mobile home parks and lots for mobile homes wherever possible. As the City points out, RV's are truly mobile and people who use them as permanent homes have options other than mobile home parks in which to locate their homes. More important, unlike RCW 59.21, the RV provisions of the Ordinance do not require any payments or place any affirmative burdens on the property owner. Finally, there is evidence that the Ordinance is less oppressive than other proposed solutions. The City considered and rejected a proposed downzoning of areas containing mobile homes. The Park is still zoned C1 commercial, and Guimont retains the ability to use and develop the property for purposes other than as a mobile home park.

Turning to the other half of the balancing test, on the record before us, the effect of the RV prohibition on the property owner is minimal. Guimont has submitted no evidence to establish the amount or percentage of value lost, although rent income could potentially decrease when current RV tenants are forced to leave. It is significant that the Ordinance contains provisions to mitigate the impact of the RV prohibition, such as the "grandfather" and the nonconforming lot exemptions. Guimont may use the property for any use permitted in a C1 commercial zone, now and in the future. The Ordinance will affect the property only so long as it remains a mobile home park. Guimont had notice that renting to RV's could be limited or prohibited when the City adopted the current land use code allowing mobile home parks but excluding trailer and RV parks in a C1 zone. Finally, the Ordinance does not interfere with Guimont's ability to alter present or currently planned uses.[11]

---

[11]The Ordinance's RV prohibition is inconsistent with RCW 59.21.020(1), which requires mobile home park owners to pay the actual relocation expenses of RV's used as residences. This provision may be unconstitutional under the rationale of *Guimont* I, but its presence in the Act indicates that the Legislature understood that there are permanent RV dwellers who rent space in mobile home parks.

The RV prohibition is not unduly oppressive because it is consistent with the current residential use and does not require Guimont to remain in the mobile home park business against his will. It is a regulation on the use of land and thus a legitimate exercise of state police power regarding property use. *Robinson v. Seattle*, 119 Wn.2d 34, 56, 830 P.2d 318, *cert. denied*, 113 S. Ct. 676 (1992). There is no violation of substantive due process.

b. Relocation Report

Guimont alleges that the relocation report requirement violates his right to substantive due process. While we agree that some of the requirements, such as listing all mobile home pads available in the Puget Sound area, could be unduly oppressive, this claim is not ripe for review. It is undisputed that Guimont has not submitted the required report. There are thus no facts on which to determine whether the requirement is unduly oppressive.

IV

VAGUENESS

Finally, Guimont challenges the proviso of the RV prohibition:

> All mobile home park lots shall be reserved for use by mobile homes. No recreational vehicle may displace or replace a mobile home in any mobile home lot; provided . . . that when a mobile home lot becomes vacant for any reason, it may not be occupied by a recreational vehicle unless the vacant mobile home lot, because of its size, irregular configuration, or inadequate utilities or facilities, cannot accommodate a mobile home.

SMC 22.904.400. Guimont contends that this language is unconstitutionally vague because it does not apprise it of the standards by which lots suitable for rental to RV's will be determined. The determination of which sublots are standard will, of necessity, have to be decided on a lot-by-lot basis. However, Guimont has not yet asked the City to apply the proviso to its property. As with Guimont's challenge to the relocation report, we have no factual basis upon which to review this claim.

The trial court is affirmed.

WEBSTER and BECKER, JJ., concur.

Reconsideration denied June 9, 1995.

Review denied at 127 Wn.2d 1023 (1995).