[No. 25967-6-III. Division Three. April 24, 2008.]

PAUL LAWSON, *Respondent*, v. THE CITY OF PASCO, *Appellant*.

---

*Leland B. Kerr* (of *Kerr Law Group*), and *Vicki L. Higby* (of *Paine Hamblen, LLP*), for appellant.

*George Fearing*, for respondent.

¶1 STEPHENS, J.[*] — The city of Pasco (City) appeals a Franklin County Superior Court order reversing a Code Enforcement Board determination that Paul Lawson violated a valid city ordinance by allowing placement of recreational vehicles in his residential mobile home park. The City contends the court erred in holding that the Manufactured/Mobile Home Landlord-Tenant Act, chapter 59.20 RCW, preempts the city ordinance and thus renders it invalid. We agree with the City and reverse the superior court's order.

¶2 The facts are undisputed. Pasco Municipal Code (PMC) 25.40.060 states, "No recreational vehicle sites for occupancy purposes shall be permitted within any residential park." Paul Lawson owns a residential park, i.e., a mobile home park, in Pasco in which at least one tenant (Tye Gimmell) lives in a recreational vehicle as his permanent residence. On January 23, 2006, the City issued Mr. Lawson a correction notice stating he was in violation of PMC 25.40.060 by allowing recreational vehicles used as permanent residences to be placed within a residential park. The notice directed him to remove all recreational vehicles from the park.

¶3 Mr. Lawson admitted to being in violation of PMC 25.40.060 but maintained to the City that state law—the Manufactured/Mobile Home Landlord-Tenant Act (Act), chapter 59.20 RCW—preempts the ordinance because it authorizes, if not requires, recreational vehicles used as a primary residence to be allowed in mobile home parks.

¶4 The matter proceeded to a hearing before the Code Enforcement Board on May 4, 2006. Mr. Lawson appeared

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals when this matter was heard. She is now serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

only through counsel. Mr. Gimmell testified that his recreational vehicle (a 35-foot fifth wheel) situated in Mr. Lawson's mobile home park is his permanent residence. He said he has a one-year written lease agreement that is renewable unless Mr. Lawson has good cause to terminate it.

¶5 The Code Enforcement Board upheld the notice of violation and issued a written order directing Mr. Lawson to remove any recreational vehicles used as permanent residences from his mobile home park within 90 days or face monetary penalties. Mr. Lawson then timely filed a Land Use Petition Act (LUPA), chapter 36.70C RCW, appeal to the superior court.

¶6 On February 23, 2007, the court entered an order reversing the Code Enforcement Board's order and vacating the notice of violation. The court reasoned:

> The City of Pasco may not, by ordinance, preclude the use of a mobile home park space by a recreational vehicle, as long as the recreational vehicle is used as the permanent residence of the occupant. RCW 59.20 preempts any ordinance that bars the placement of a recreational vehicle on a mobile home park, as long as the recreational vehicle is used as the permanent residence of the occupant.

Clerk's Papers at 8-9. The City appeals.

## REVIEW STANDARDS

¶7 Judicial relief from a land use decision may be granted when one of the following standards set forth in LUPA are met:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> . . . .
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;

. . . .

    (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

    ■■ ¶8 When reviewing a superior court's decision in a LUPA appeal, we stand in the same position as the superior court. *See HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 468, 61 P.3d 1141 (2003). We review administrative decisions on the record before the tribunal—here the Code Enforcement Board. *Id.* Questions of law are reviewed de novo to determine whether the Board's decision was supported by fact and law. *Id.*

    ¶9 The sole issue in this appeal is a legal one—whether chapter 59.20 RCW preempts the ordinance so as to render it an invalid exercise of local police power.[1]

## ANALYSIS

    ■ ¶10 Article XI, section 11 of the state constitution provides that "[a]ny . . . city . . . may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." A municipality may thus enact an ordinance concerning the same subject matter as a state law, provided that the state enactment is not intended to be exclusive and the ordinance does not conflict with the general law of the state. *King County v. Taxpayers of King County*, 133 Wn.2d 584, 611, 949 P.2d 1260 (1997), *cert. denied*, 523 U.S. 1076 (1998); *City of Tacoma v. Luvene*, 118 Wn.2d 826, 833, 827 P.2d 1374 (1992). An ordinance is unconstitutional only if the statute on the same subject preempts the field, leaving no room for concurrent jurisdiction, or if a conflict exists between the two that cannot be harmonized. *Taxpayers*, 133 Wn.2d at 612; *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991). Municipal ordinances are presumed

---

[1] The Code Enforcement Board decision did not involve construction of PMC 25.40.060.

constitutional, and a challenger bears a heavy burden of showing otherwise. *Brown*, 116 Wn.2d at 559; *Hous. Auth. v. City of Pasco*, 120 Wn. App. 839, 86 P.3d 1217 (2004).

"Field" Preemption

¶11 Here, the superior court's ruling does not differentiate between "field" preemption and a "conflict" between the ordinance and the Act. Nor do the parties explicitly draw that distinction. In any case, preemption may be found when there is express legislative intent to preempt the field or such intent appears by necessary implication. *Brown*, 116 Wn.2d at 560. A statute will not be construed as taking away a municipality's power to legislate unless that intent is clearly and expressly stated. *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979).

¶12 Examining the scheme of chapter 59.20 RCW, it is clear that, while the legislature intends to act in the field of regulating mobile home park landlord-tenant relationships, it has not wholly preempted local action in this field.

¶13 First, RCW 59.20.040 provides:

> This chapter shall regulate and determine legal rights, remedies, and obligations *arising from any rental agreement between a landlord and a tenant regarding a mobile home lot....* All such rental agreements shall be unenforceable to the extent of any conflict with any provision of this chapter.

(Emphasis added.) And RCW 59.20.080(3) states that the chapter "govern[s] the eviction of . . . recreational vehicles used as a primary residence from a mobile home park."

¶14 RCW 59.20.030 defines the types of dwellings included under the Act:

> For purposes of this chapter:
>
>     . . . .
>
>     (3) "Manufactured home" means a single-family dwelling built according to the United States department of housing and urban development manufactured home construction and

safety standards act, which is a national preemptive building code. A manufactured home also: (a) Includes plumbing, heating, air conditioning, and electrical systems; (b) is built on a permanent chassis; and (c) can be transported in one or more sections with each section at least eight feet wide and forty feet long when transported, or when installed on the site is three hundred twenty square feet or greater;

(4) "Mobile home" means a factory-built dwelling built prior to June 15, 1976, to standards other than the United States department of housing and urban development code, and acceptable under applicable state codes in effect at the time of construction or introduction of the home into the state . . . ;

(5) *"Mobile home lot" means a portion of a mobile home park* or manufactured housing community *designated as the location of one mobile home, manufactured home, or park model* and its accessory buildings, *and intended for the exclusive use as a primary residence by the occupants* of that mobile home, manufactured home, or park model;

. . . .

(9) *"Park model" means a recreational vehicle intended for permanent or semi-permanent installation and is used as a primary residence;*

(10) *"Recreational vehicle" means a travel trailer, motor home, truck camper, or camping trailer* that is primarily designed and used as temporary living quarters, is either self-propelled or mounted on or drawn by another vehicle, is transient, *is not occupied as a primary residence*, and is not immobilized or permanently affixed to a mobile home lot.

(Emphasis added.)

¶15 Under these definitions, the parties agree that Mr. Gimmell's recreational vehicle occupied as his primary residence situated on a lot in Mr. Lawson's residential park is at least considered a "park model" for purposes of the Act.

¶16 But while occupying the field, the legislature has also conferred certain measures of deference to local authority. RCW 59.20.080 provides:

(1) A landlord shall not terminate or fail to renew a tenancy of a tenant or the occupancy of an occupant, of whatever duration except for one or more of the following reasons:

. . . .

(d) Failure of the tenant to comply with local ordinances and state laws and regulations relating to mobile homes, manufactured homes, or park models or mobile home, manufactured homes, or park model living within a reasonable time after the tenant's receipt of notice of such noncompliance from the appropriate governmental agency;

. . . .

(i) Failure of the tenant to comply with obligations imposed upon tenants by applicable provisions of municipal, county, and state codes, statutes, ordinances, and regulations, including this chapter. The landlord shall give the tenant written notice to comply immediately. The notice must state that failure to comply will result in termination of the tenancy and that the tenant shall vacate the premises within fifteen days.

And RCW 59.20.130(1) states:

It shall be the duty of the landlord to:

(1) Comply with codes, statutes, ordinances, and administrative rules applicable to the mobile home park.

¶17 Reading the above-quoted sections of RCW 59.20-.040, .080, and .130 together, the legislature has expressly conferred concurrent jurisdiction to local municipalities in the field of regulating landlord-tenant compliance with ordinances. The Act therefore does not preempt PMC 25.40.060.

### "Conflict" between the Ordinance and the Act

¶18 The dispositive question in this appeal then is whether there exists an irreconcilable conflict between chapter 59.20 RCW and PMC 25.40.060.

¶19 The City contends there is no conflict because nothing in the Act requires, or even authorizes, a mobile home park landlord (such as Mr. Lawson) to violate PMC 25-.40.060 by renting spaces to recreational vehicles, even if used as primary residences. Instead, RCW 59.20.130(1) expressly requires a landlord to comply with ordinances applicable to the residential park. The City thus contends it

may exclude recreational vehicles as a legitimate exercise of its zoning and police powers for regulating land use. *Guimont v. City of Seattle*, 77 Wn. App. 74, 89, 896 P.2d 70, *review denied*, 127 Wn.2d 1023 (1995).

¶20 Mr. Lawson, on the other hand, contends the ordinance conflicts with the Act because the ordinance allows, if not demands, a mobile home park owner to evict a recreational vehicle used as a primary residence, yet RCW 59.20.080(1) does not include the mere fact that a dwelling is a recreational vehicle as a cause for eviction. Conversely, state law allows (if not demands) that a recreational vehicle be placed in a mobile home park, whereas the Pasco ordinance precludes a recreational vehicle from resting in a mobile home park. Thus, according to Mr. Lawson, the legislative intent is to prevent mobile home park landlords from discriminating against recreational vehicles used as primary residences. We reject Mr. Lawson's arguments.

¶21 An ordinance conflicts with a statute when it permits what state law forbids or prohibits what state law permits. *Parkland Light & Water Co. v. Tacoma-Pierce County Bd. of Health*, 151 Wn.2d 428, 434, 90 P.3d 37 (2004); *Rabon v. City of Seattle*, 135 Wn.2d 278, 292, 957 P.2d 621 (1998); *City of Bellingham v. Schampera*, 57 Wn.2d 106, 110-11, 356 P.2d 292 (1960). But an ordinance may be more restrictive than a state enactment so long as the statute does not forbid the more restrictive ordinance. *Seattle Newspaper-Web Pressmen's Union Local No. 26 v. City of Seattle*, 24 Wn. App. 462, 469, 604 P.2d 170 (1979) (citing *Lenci v. City of Seattle*, 63 Wn.2d 664, 670-71, 388 P.2d 926 (1964)); *see Rabon*, 135 Wn.2d at 292. This concept applies when a state enactment does not in any way grant permission to do a particular thing in *any* (every) place. Such is the case here.

¶22 For example, in *Schillberg*, 92 Wn.2d at 108, the court held that a state law regulating safe operation of motorboats did not conflict with a local ordinance banning motorboats on a specific lake. The court reasoned, "There being no express statement nor words from which it could

be fairly inferred that motor boats are permitted on all waters of the state, no conflict exists and the ordinance is valid." *Id.*

¶23 In *Second Amendment Foundation v. City of Renton*, 35 Wn. App. 583, 668 P.2d 596 (1983), a state firearms statute (ch. 9.41 RCW) provided for a license to carry a concealed pistol on the person. A Renton city ordinance limited the possession of firearms where alcoholic beverages were dispensed by the drink. The court held that the statute and ordinance were not inconsistent when the statute did not expressly state an unqualified right to be in possession of a firearm at any time or place, and the ordinance did not purport to contradict or restrict any portion of the statute. *Id.* at 588-89.

¶24 Similarly, chapter 59.20 RCW is regulatory legislation encompassing landlord-tenant relationships arising from rental of lot spaces for recreational vehicles used as primary residences. But the City is correct that the Act does not, in the first instance, require a landlord to rent a mobile home park lot for placement of a recreational vehicle (park model) in any (or every) particular place within the state. And the ordinance in no way attempts to restrict or contradict the provisions of the Act, which expressly defers to municipal authority in RCW 59.20-.130(1). In this situation, we conclude there is no irreconcilable conflict between chapter 59.20 RCW and PMC 25.40.060.

¶25 Moreover, the statute and ordinance can each operate distinctly without inconsistency. *See Pressmen's Union*, 24 Wn. App. at 469. Although no federal enactment is at issue here, this concept is consistent with the federal conflict test, i.e., whether it is impossible to comply with both laws. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78-80, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990); *S. Pac. Transp. Co. v. Pub. Util. Comm'n*, 9 F.3d 807, 810 (9th Cir. 1993); *see also City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 667, 41 P.3d 1169 (2002). A residential park landlord could

readily comply with both the Act and an ordinance such as Pasco's.

¶26 For example, a landlord may own two residential parks—one in which the city allows placement of recreational vehicles as primary residences, and the other in which such dwellings are precluded under city land use regulations. The landlord could thus freely rent spaces for recreational vehicles in the first park but may simply abide by the ordinance and refuse to do so in the second park. The Act then governs the landlord-tenant relationship in the first park, but refusing to rent in the second park does not violate the Act, which defers to local authority for enforcement of ordinances against landlords. RCW 59.20.130(1).[2]

¶27 Mr. Lawson fails to show that PMC 25.40.060 is preempted by the Act and therefore unconstitutional. He makes no other challenge to the ordinance. We thus hold that PMC 25.40.060 is a valid exercise of municipal police power. *See Guimont*, 77 Wn. App. at 89 (exclusion of recreational vehicles from mobile home parks under city ordinance was legitimate exercise of city's zoning and police power for regulating land use).

¶28 Accordingly, the superior court's order is reversed and the Code Enforcement Board's determination that Mr. Lawson violated the ordinance is reinstated.

SCHULTHEIS, C.J., and KULIK, J., concur.

Review granted at 165 Wn.2d 1012 (2009).

---

[2] Any issues under the Act that may exist between Mr. Lawson and any particular tenant are not before this court because Mr. Lawson and the City are the only parties to the action.